IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JONATHAN O. HAFEN, in his capacity as court-appointed Receiver,<br><br>Plaintiff,<br><br>v.<br><br>MONS AASE; THE ESTATE OF GENE ANDREINI; LERAY ANDREINI; TRACI HARMOND; TERRY JONES; and LARRY MILLIGAN,<br><br>Defendants. | **ORDER AND MEMORANDUM DECISION GRANTING MOTION FOR DEFAULT JUDGMENT**<br><br>Case No. 2:19-cv-00910-TC<br><br>Judge Tena Campbell |

Before the court is a motion for default judgment (ECF No. 34) filed by Plaintiff Jonathan O. Hafen, the court-appointed Receiver over the assets of Rust Rare Coin, Inc., Gaylen Dean Rust, R Legacy Racing Inc., R Legacy Entertainment LLC, and R Legacy Investments LLC (collectively, the Receivership Defendants). This action is ancillary to litigation involving the Receivership Defendants. See Commodity Futures Trading Comm'n v. Rust Rare Coin, Case No. 2:18-cv-892.

The Receiver filed this action against Defendants LeRay Andreini and Larry Milligan on November 15, 2019.[1] (See Compl., ECF No. 2.) Neither Defendant filed an answer and the

---

[1] The action originally included four additional defendants (Mons Aase, The Estate of Gene Andreini, Traci Harmond, and Terry Jones, but these defendants have all been dismissed. (See Notices of Voluntary Dismissal, ECF Nos. 22 & 33.)

1

Receiver moved for entry of default against these Defendants on March 18, 2022.  (ECF No. 24.)  The Clerk of Court entered a default certificate on March 24, 2022.  (ECF No. 25.)

The Receiver now requests entry of judgment against Mr. Andreini in the total amount of $323,226.  This amount includes $252,008 in fraudulent and voidable transfers and $71,218 in prejudgment interest calculated at the rate of 5% per annum from October 31, 2018, the last date Mr. Andreini received a transfer from Rust Rare Coin.  The Receiver also requests entry of judgment against Mr. Milligan in the total amount of $136,611.  This amount includes $106,171 in fraudulent and voidable transfers and $30,440 in prejudgment interest calculated at the rate of 5% per annum from October 1, 2018, the last date Mr. Milligan received a transfer from Rust Rare Coin.

For the following reasons, the court grants the Receiver's motion.

## LEGAL STANDARD

Entry of a default judgment under Rule 55 of the Federal Rules of Civil Procedure is a two-step process.  See Meyers v. Pfizer, Inc., 581 F. App'x 708, 710 (10th Cir. 2014).  If a defendant fails to timely respond to the complaint after proper service, a plaintiff may request entry of a default by the court clerk, who then decides whether to enter a default.  Id. (citing Fed. R. Civ. P. 55(a)).  "If the clerk enters a default, the plaintiff can ask the court to grant a default judgment."  Id. (citing Fed. R. Civ. P. 55(b)(2)).

A trial court has broad discretion in deciding whether to enter a default judgment. Galloway v. Hadl, No. 07-3016-KHV, 2008 WL 5109758, at *1 (D. Kan. Dec. 2, 2008) (citing Grandbouche v. Clancy, 825 F.2d 1463, 1468 (10th Cir. 1987)).  Furthermore, a plaintiff must establish that the amount of requested damages is reasonable under the circumstances.  DeMarsh v. Tornado Innovations, L.P., No. 08-2588-JWL, 2009 WL 3720180, at *2 (D. Kan. Nov. 4,

2009). "Damages may be awarded only if the record adequately reflects the basis for [the] award via 'a hearing or a demonstration by detailed affidavits establishing the necessary facts.'" Id. (quoting Adolph Coors Co. v. Movement Against Racism & the Klan, 777 F.2d 1538, 1544 (11th Cir. 1985)).

## ANALYSIS

The Receiver supports his motion with a declaration from Jeffrey T. Shaw, CPA, CFE, CIRA. (Decl. Jeffrey T. Shaw, ECF No. 34-1.) The court has carefully reviewed Mr. Shaw's declaration and supporting exhibits and agrees with his conclusions, a helpful summary of which is included at Exhibits 2 and 3 to his declaration.

### I. LeRay Andreini

According to investor statements prepared by Gaylen Rust, in or around August 2010, Mr. Andreini opened a silver investment account with Mr. Rust and contributed $140,000 in cash to that account between September 2010 and March 2013. (See Exs. 4-6 to Shaw Decl.) Mr. Shaw also gives Mr. Andreini credit for an additional investment of approximately $11,843 in or around February 2017, even though the only support for that investment comes from Mr. Rust's investor statements. (See Ex. 7 to Shaw Decl.) In total, therefore, Mr. Andreini made investment contributions of approximately $151,843.

From August 2012 to October 2018, Mr. Andreini received investment payments totaling $403,851. (See Exs. 8–59 to Shaw Decl.) Mr. Shaw attached seven checks to his declaration detailing several of these payments (Exs. 8, 12, 27, 35–36, 49, 54 to Shaw Decl.); one check for $20,000 for which records show that Mr. Andreini received $6,000 (Ex. 53 to Shaw Decl.); and one wire transfer to Backman Title Services on behalf of Mr. Andreini (Ex. 37 to Shaw Decl.). Of the remaining 43 payments, Mr. Shaw identified eight payments which are corroborated by

Rust Rare Coin receipts with "cash out" in the description that are signed by Mr. Andreini. (Exs. 50–52, 55–59 to Shaw Decl.) The other 35 payments are identified only in the investor statements prepared by Mr. Rust. (See Exs. 9–11, 13–26, 28–34, 38–48 to Shaw Decl.) But the court finds that these statements are sufficiently corroborated by the checks and other evidence in the record. Accordingly, the Receiver has established that Mr. Andreini received payments totaling $403,851.

Subtracting Mr. Andreini's contributions from the payments he received, the court finds that Mr. Andreini received net winnings in the amount of $252,008.

### II. Larry Milligan

According to later investor statements, in or around August 2011, Mr. Milligan opened an investment account and contributed approximately $63,329 in cash to that account between 2011 and October 2014. (See Exs. 60-63 to Shaw Decl.) Mr. Shaw gives Mr. Milligan credit for these investment amounts even though the only support for that investment comes from Mr. Rust's investor statements. (See id.)

From May 2014 to October 2018, Mr. Milligan received investment payments totaling $169,500. (See Exs. 64–92 to Shaw Decl.) Mr. Shaw has provided substantial evidence of these payments by attaching the associated checks. (See id.)

Subtracting Mr. Milligan's contributions from the payments he received, the court finds that Mr. Milligan received net winnings in the amount of $106,171.

### III. Prejudgment Interest

The court agrees with the Receiver that prejudgment interest from the last date that an investment payment was made—October 31, 2018, for Mr. Andreini and October 1, 2018, for Mr. Milligan—is appropriate here. The Tenth Circuit has previously upheld the award of

prejudgment interest at a rate of 5% per annum to a receiver for a fraudulent transfer claim because prejudgment interest "compensates for the loss of use of the money" and "[u]nder fairness and equity principles, prejudgment interest was proper." Wing v. Gillis, 525 F. App'x 795, 801 (10th Cir. 2013); see also Miller v. Kelley, No. 1:12-cv-56, 2014 WL 5437023, at *7 (D. Utah Oct. 27, 2014). This court has previously awarded prejudgment interest in ancillary actions to the Rust Rare Coin litigation. See, e.g., Hafen v. Howell, No. 2:19-cv-813-TC, 2023 WL 5000944, at *5–7 (D. Utah Aug. 4, 2023). The court therefore awards the receiver prejudgment interest at the rate of 5% per annum from October 31, 2018, for Mr. Andreini and October 1, 2018, for Mr. Milligan, the last date the Defendants received a transfer from Rust Rare Coin. This amount totals $71,218 for Mr. Andreini and $30,440 for Mr. Milligan. Post-judgment interest is also recoverable under 28 U.S.C. § 1961(a).

## ORDER

For the foregoing reasons, the court ORDERS as follows:

1. The Receiver's Motion for Default Judgment (ECF No. 34) is GRANTED.

2. The court awards the Receiver $323,226 against Defendant LeRay Andreini, an amount that represents $252,008 in fraudulent and voidable transfers and $71,218 in prejudgment interest.

3. The court awards the Receiver $136,611 against Defendant Larry Milligan, an amount that represents $106,171 in fraudulent and voidable transfers and $30,440 in prejudgment interest.

3. The court's judgment shall bear interest calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week

preceding the date of the judgment. See 28 U.S.C. § 1961(a).

DATED this 5th day of July, 2024.

BY THE COURT:

Tena Campbell
United States District Judge